# 15 MAG 706

ORIGINAL

Approved: _____
SHAWN G. CROWLEY
Assistant United States Attorney

DOC #

Before:    THE HONORABLE ANDREW J. PECK
           United States Magistrate Judge
           Southern District of New York

---------------------------------------X
                                        :
UNITED STATES OF AMERICA                :
                                        :
              - v. -                    :
                                        :
JON CRUZ,                               :
                                        :
                 Defendant.             :
                                        :
---------------------------------------X

SEALED COMPLAINT

Violations of
18 U.S.C. §§ 2251,
2252A

COUNTY OF OFFENSE:
NEW YORK

        AARON SPIVACK, being duly sworn, deposes and says that he
is a Special Agent with the Federal Bureau of Investigation
("FBI") and charges as follows:

### COUNT ONE
(Inducement of Minor to Engage in Sexually Explicit Conduct)

        1.    From in or about at least November 2014, up to and
including at least in or about December 2014, in the Southern
District of New York and elsewhere, JON CRUZ, the defendant,
willfully and knowingly did employ, use, persuade, induce,
entice, and coerce a minor to engage in sexually explicit
conduct for the purpose of producing a visual depiction of such
conduct, knowing and having reason to know that such visual
depiction would be transported and transmitted using a means and
facility of interstate and foreign commerce, which visual
depiction was actually transported and transmitted using a
facility of interstate and foreign commerce, to wit, CRUZ
induced a 15-year-old child in New Mexico to send sexually
explicit images of himself to CRUZ over the Internet.

        (Title 18, United States Code, Sections 2251(a), and 2.)



U.S. DISTRICT COURT
FILED
MAR 06 2015
D.S.
S.D. OF N.Y.

COUNT TWO
(Receipt of Child Pornography)

2.    From in or about at least November 2014, up to and including at least in or about December 2014, in the Southern District of New York and elsewhere, JON CRUZ, the defendant, knowingly did receive materials that contained child pornography that had been transported in and affecting interstate and foreign commerce by computer, to wit, CRUZ received chat communications over the Internet sent from a 15-year-old child in New Mexico containing sexually explicit pictures of the child.

(Title 18, United States Code, Sections 2252A(a)(2)(B).)

COUNT THREE
(Possession of Child Pornography)

3.    At least on or about March 6, 2015, in the Southern District of New York, JON CRUZ, the defendant, knowingly did possess and access with intent to view a book, magazine, periodical, film, videotape, computer disk, and other material that contained an image of child pornography that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, and that was produced by using materials that had been mailed, shipped and transported in or affecting interstate and foreign commerce by any means, including by computer, to wit, CRUZ possessed images of child pornography in his residence in New York, New York.

(Title 18, United States Code, Sections 2252A(a)(5)(B), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.    I am currently employed as a Special Agent with the FBI, and I am currently assigned to the Crimes Against Children squad. I am one of the agents with primary responsibility for this investigation. I base this affidavit on my personal involvement in this investigation, as well as on my conversations with law enforcement agents and others, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and

conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Investigation

5.   Since at least December 2014, the FBI has been investigating an individual who is paying minor victims (the "Victims") to send him photographs, including nude and lascivious photographs, of themselves over the mobile communication application KIK.

6.   For the reasons that follow, I believe that JON CRUZ, the defendant, is the individual described above.   I also believe that CRUZ has been using an online alias to conceal his identity, as described below.

## The New Mexico Investigation

7.   Based on my personal involvement in this investigation, my review of records maintained by the FBI, and my conversations with an agent from the FBI New Mexico Office ("Agent-1"), I have learned the following, in substance and in part:

a. In or about December 2014, a Sheriff's Office in New Mexico (the "New Mexico PD") received calls from parents of minor teenage boys, who said that their sons (the "New Mexico Victims") had been paid by an Internet user to send photographs of themselves over a mobile communication application.   The New Mexico PD referred the investigation to the FBI.

b. Agent-1 met with five of the New Mexico Victims.   One of the Victims ("Victim-1") informed Agent-1, in substance and in part, the following:

i. Victim-1 is 15 years old.   In or about August 2014, an individual identifying himself by a certain name later determined to be fraudulent ("Individual-1," using "Name-1") contacted Victim-1 over the KIK mobile communication application.   Individual-1 asked Victim-1 how old Victim-1 was and Victim-1 informed Individual-1 that Victim-1 was 15 years old.   Individual-1 asked Victim-1 to send Individual-1 photographs of Victim-1's feet and face.   Victim-1 sent Individual-1 several photographs of Victim-1's feet and face. Individual-1 also asked Victim-1 to send Individual-1 photographs of Victim-1 doing a "thumbs-up selfie."   Individual-1 sent Victim-1 the numbers for approximately $900 in Visa and American Express gift cards in exchange for the photographs.

-3-

ii. Victim-1 continued to chat with Individual-1 over KIK and continued to send Individual-1 non-nude photographs of Victim-1 in exchange for payment. Individual-1 told Victim-1 that Individual-1 was a fifteen or sixteen year old who made money building robotics. Individual-1 told Victim-1 that Individual-1 was a nerd who "had a thing for jocks." Individual-1 asked Victim-1 if Victim-1 would send Individual-1 nude photographs of Victim-1. Victim-1 responded that he would not.

iii. Individual-1 and Victim-1 continued to chat via KIK. Individual-1 periodically asked Victim-1 if they could discuss sex. Individual-1 told Victim-1 that Individual-1 was going to move to New Mexico and that Individual-1 would perform sexual acts on Victim-1. Individual-1 told Victim-1 that Individual-1 wanted to be Victim-1's "slave." Individual-1 described certain sexual acts that Individual-1 wanted Victim-1 to force Individual-1 to do to Victim-1. Individual-1 discussed giving Victim-1 a "blow job" on several occasions, and asked Victim-1 if Victim-1 would give Individual-1 a "blow job."

iv. Some time after Thanksgiving 2014, Individual-1 asked Victim-1 for nude photographs of Victim-1. Victim-1 responded that Victim-1 would not send nude photographs for less than $450. Individual-1 agreed and requested that Victim-1 pose in certain positions in the nude photographs. Individual-1 requested that Victim-1 include Victim-1's feet in the photographs. Individual-1 requested at least one photograph that depicted only Victim-1's penis. Individual-1 requested that Victim-1 put Victim-1's hand on his penis in another photograph. Individual-1 requested that Victim-1 flex in some of the nude photographs. Individual-1 requested that Victim-1 do a "thumbs-up" sign in some of the nude photographs. Individual-1 requested that Victim-1's penis be erect in the nude photographs.

v. Victim-1 sent Individual-1 approximately five to seven nude photographs pursuant to Individual-1's requests. Victim-1 took the nude photographs in front of the mirror in Victim-1's bathroom. Victim-1's penis was erect in all of the photographs Victim-1 sent to Individual-1. Individual-1 complimented Victim-1 on the photographs and told Victim-1 that his penis was "huge." Individual-1 sent Victim-1 the numbers for approximately $500 in gift cards in exchange for the nude photographs. In addition, Individual-1 asked Victim-1 to provide Individual-1 with names of other boys who would chat with Individual-1.

-4-

vi. Victim-1 made purchases with the online gift cards he received from Individual-1. Victim-1's parent found the gift receipts on the parent's home computer when Victim-1 forgot to log out of Victim-1's email account. After his parent confronted Victim-1 about the receipts, Victim-1 destroyed Victim-1's mobile phone and a flash drive that contained Victim-1's KIK chats.

vii. Individual-1 used two KIK accounts ("KIK Account-1" and "KIK Account-2," collectively the "KIK Accounts") to communicate with Victim-1. Victim-1 estimated that Individual-1 sent Victim-1 approximately $1,600 in gift cards for all of the photographs Victim-1 provided to Individual-1.

c. Agent-1 met with another New Mexico Victim ("Victim-2"). Victim-2 informed Agent-1, in substance and in part, the following:

i. Victim-2 is 15 years old. In or about late summer 2014, Individual-1 (using Name-1) contacted Victim-2 via KIK. Individual-1 told Victim-2 that Individual-1 had obtained Victim-2's KIK username from Victim-2's Instagram account. Individual-1 told Victim-2 that Victim-2 looked like a model, and that Individual-1 would pay Victim-2 to send Individual-1 photographs of Victim-2.

ii. Victim-2 sent Individual-1 approximately 40 photographs of Victim-2. Victim-2 did not send Individual-1 nude photographs of Victim-2. Individual-1 requested that Victim-2 send Individual-1 "weird foot pictures," and to "imagine you without any clothes on." Victim-2 told Individual-1 that Victim-2 would not send Individual-1 any nude photographs of Victim-2.

iii. Individual-1 used KIK Account-2 to communicate with Victim-2. Victim-2 estimated that Individual-1 sent him approximately $800 in online gift cards for the photographs Victim-2 sent. Victim-2 informed Agent-1 that Victim-2 saved the account numbers for two of gift cards Individual-1 provided to Victim-2 on Victim-2's mobile phone ("Gift Card-1" and "Gift Card-2"). Victim-2 provided Agent-1 with the numbers for Gift Card-1 and Gift Card-2.

## The New York Investigation

8. Based on my conversations with a detective ("Detective-1") from the New York State Police ("NYSP") and my

-5-

review of records maintained by the NYSP, I have learned the following, in substance and in part:

    a. On or about August 31, 2014, a police department in a county in upstate New York ("County PD") received a phone call from an individual who said that her son ("Victim-3") was receiving unwanted text messages on his mobile phone.

    b. A County PD officer ("Officer-1") met with Victim-3. Victim-3 is 14 years old. Victim-3 informed Officer-1, in substance and in part, that Individual-1 (using "Name-1") had communicated with Victim-3 by KIK. Individual-1 used KIK Account-1 to communicate with Victim-3. Individual-1 provided Victim-3 with the number for a Visa gift card worth approximately $300 ("Gift Card-3") in exchange for photographs of Victim-3 posing in Victim-3's bedroom. Victim-3 did not provide Individual-1 with any nude photographs. Victim-3 provided Officer-1 with the mobile phone Victim-3 used to communicate with Individual-1 ("Cellphone-1"). Victim-3 also provided Officer-1 with the number, expiration date, and security code for Gift Card-3.

    c. I have reviewed the contents of Cellphone-1, including the conversations between Individual-1 and Victim-3 over KIK. A summary of the conversations is below:

        KIK Account-1:  One more thumbs up selfie for now so I know you're still excited? I assume you're cool doing pictures and chatting later?
        Victim-3:  [sends photograph of thumbs-up selfie]

        . . . .

        KIK Account-1:  I just got a very long message from [friend of Victim-3] btw.  [Another friend] also messaged me.
        Victim-3:  I told them you were legit
        Victim-3: They seem pretty excited.
        KIK Account-1:  [Friend] seems uninterested again. Could you kik him?  [Other friend] said we would talk but then stopped replying
        KIK Account-1:  Could you send a thumbs up again? Would you be willing to do pictures tonight and chat more?  I assume they don't know about the pictures, right?

        . . . .

KIK Account-1:   Can I keep asking things and asking
for specific pix requests?   I just want to make sure
the pics are between us, right?
Victim-3:   [sends photograph] Sure but I still know
why u need all these pics?
KIK Account-1: Can I be honest
KIK Account-1:   That shirt sums up why you get to take
my money.  You know?
Victim-3:   O yah lol
KIK Account-1:   Pictures just have a huge impact on
me.   Seeing your feet and face and muscles and room
and awards and stuff reinforce what a big deal you
are.
Victim-3:   Yah.
KIK Account-1:   Now that you see I'm real we can be
more honest about hw and head and sex and stuff?   I
hope!
Victim-3:   Ok
KIK Account-1:   I still have a lot of questions and I
feel like we have a lot to discuss.
Victim-3:   Ok
KIK Account-1: I keep thinking about what a big deal
you are tbh
KIK Account-1:   Could I see pics of your room that
maybe would show off how you're a big deal?

. . . .

KIK Account-1:   Do you still have access to a mirror
and we still have privacy?
KIK Account-1:   Where are you now?
Victim-3:   In my living room
KIK Account-1:   Could I see a few shots of your
bedroom soon?   That's your headquarters basically
right?

. . . .

KIK Account-1:   Well let me ask another question which
will eventually relate
KIK Account-1:   By our age tbh athletes begin to get
blowjobs
KIK Account-1:   Some even start to have sex
KIK Account-1:   I'm assuming popular guys talk a lot
about it?

-7-

. . . .

Victim-3:  I want to find out what school you go to.
KIK Account-1:  I mean tbh completely, by our age I
think athletes basically need to cum nonstop.  You
know?
KIK Account-1:  You could have asked.  The Dalton
School in Manhattan
KIK Account-1:  I am worried you now don't trust me
again.  Which is weird since I paid.
Victim-3:  So then why are you moving to [Victim-3's
town]?
KIK Account-1:  This is why you should be smiling big
time that you have literally found the perfect slave.
KIK Account-1:  My parents do venture capital and want
to invest in upstate New York.  It's a huge chance for
us since the town is so tiny that we are moving to.

. . . .

KIK Account-1:  I think the popular guys in the grade
are going to be really impressed when they see you
have a slave tbh.

. . . .

KIK Account-1:  Can I see your feet again and would
you flex muscles in some if I owed?  . . . And can I
ask stuff?
Victim-3:  [sends photographs]
KIK Account-1:  Soles too.  And a pic of your slides
please.  Calf muscles and arm muscles and
chest/stomach/face?  What do I have to pay for for
lots of pics and chatting now?
Victim-3:  [sends photograph]
KIK Account-1:  Wow.  Can you do that in front of a
mirror too?
KIK Account-1:  You have a six pack.  That's crazy.
Respect.
Victim-3:  Not in front of a mirror right now I'm in
bed
KIK Account-1:  Can you go to the bathroom to use one?
Victim-3:  Sure what do you need a pic of?
KIK Account-1:  Really cocky shirtless mirror shots.
Close ups of muscles.  Maybe point it at your crotch
with your finger with an "I'm a bi[g] deal" face.
Keep taking muscles and feet and face pics.

KIK Account-1:  Like take a ton.
KIK Account-1:  What do I have to owe for intense pics
and chatting tonight?
KIK Account-1:  You can be honest.
KIK Account-1:  Tbh if these are crazy intense and
uncensored and between and there are lots of them tbh
I think I should have to give up my prize from today
when I receive it.

. . . .

KIK Account-1:  Could you do that point one again
with your cro[tch] visible?  Maybe stand on something?

. . . .

Victim-3:  Nice is that enough pics
KIK Account-1:  Could you do the point one again with
your crotch visible?  Maybe stand on something?
KIK Account-1:  Please do a few more of your calves
too
KIK Account-1:  Your muscles are crazy
KIK Account-1:  Try to do a back muscle pic too?

. . . .

Victim-3:  I don't feel comfortable sending a crotch
pic but calves are fine
Victim-3:  [sends photos]
Victim-3:  how much does that earn me?
KIK Account-1:  I mean the pointing one
KIK Account-1:  Like to your crotch
KIK Account-1:  Your calves are crazy wow
KIK Account-1:  Redo the point pic please and let me
see your bed more close as stuff in your room that
shows you're a preppy, popular jock.
KIK Account-1:  But I assume I have to give the price
once it arrives.  Which hopefully is worth the wait
and you feel is an amazing amount.
KIK Account-1:  Please redo it now and do bed pics
including yourself there and pics that show why you're
a big deal.  And please let's discuss personal stuff.
Fair?
Victim-3:  $400-$500 tomorrow and ill send those pics
KIK Account-1:  Okay. And chat?

. . . .

KIK Account-1:  can I describe images and have you say
what each image means?  It would be intense to see
what you write and I would owe
Victim-3:  Ok yah

. . . .

KIK Account-1:  Socks and shoes off, bare feet on the
floor, shorts and underwear crumpled on the floor
around the jock's ankles
Victim-3:  Sounds like sex to me
KIK Account-1:  I was thinking a specific act
KIK Account-1:  Because feet probably wouldn't be on
the floor for sex, though maybe
Victim-3:  Blowjob
KIK Account-1:  Yeah
KIK Account-1:  Do you know guys who have gotten
blowjobs?
KIK Account-1:  Do you guys talk about it a lot?  For
popular kids blowjobs are a big part of life tbh

### The KIK Accounts

9.    Based on my review of documents maintained by KIK and
Time Warner, and my conversations with employees of KIK, I have
learned the following, in substance and in part:

    a. KIK Account-1 and KIK Account-2 (the "KIK Accounts")
were subscribed to in the name of Name-1.

    b. The photographs associated with the user of the KIK
Accounts (the "KIK Photographs") depict the same person.

    c. The KIK Accounts were accessed exclusively by mobile
device(s).

    d. A certain email address ("Email Address-1") was used
to open KIK Account-1.

    e. Another email address ("Email Address-2") was used to
open KIK Account-2.

    10.   Based on my training and experience, my conversations
with other law enforcement officers, and my review of documents
maintained by the FBI, I have learned the following, in
substance and in part:

a. Three IP addresses were frequently used to send messages from KIK Account-1 between at least on or about September 2, 2014 up to and including at least on or about October 1, 2014, and from on or about December 22, 2014, up to and including at least on or about February 26, 2015.[1] Two of the IP addresses ("IP Address-1" and "IP Address-2") were owned by Time Warner. The other IP address was associated with the New York City Public School System (the "School IP Address").[2]

b. IP Address-1 and IP Address-2 are dynamic IP addresses. A dynamic IP address is assigned to a particular location for a given period of time (generally, several weeks or months), and is then reassigned to a new location. Thus, a location with a dynamic IP address is assigned a new IP address every few weeks or months.

c. Based on my review of documents maintained by Microsoft, I have learned, in substance and in part, that a certain email address ("Email Address-1") was created on or about June 28, 2014. IP Address-1 was used to create Email Address-1.

d. On at least September 2, 2014, IP Address-1 was used to access KIK Account-1.[3] On at least that date, the subscriber

---

[1] The FBI was unable to obtain IP logs from KIK from on or about October 2, 2014 up to and including on or about December 21, 2014. Thus, this number does not reflect any KIK activity that occurred between those dates.

[2] At least three other IP addresses were used to access the KIK Accounts. However, two of these addresses were owned by Verizon Wireless and Hughes Network Systems, which allow for more than one hundred different electronic devices to use a single IP address at one time. The third IP address was owned by AT&T Wireless, which does not maintain subscriber or specific location information for the IP addresses owned by AT&T Wireless. KIK Account-2 was exclusively accessed from AT&T Wireless IP addresses. The FBI has been unable to obtain location or subscriber information for KIK Account-2.

[3] The County PD obtained information pursuant to an administrative subpoena regarding the subscriber information for IP Address-1. The County PD sought subscriber information only for September 2, 2014. The FBI attempted to obtain subscriber information for IP Address-1 for all other dates on which the KIK Accounts were accessed. However, by the time the investigation was referred to the FBI and the FBI sought this information, Time Warner no longer had subscriber information for IP Address-1.

-11-

for IP Address-1 was JON CRUZ, the defendant, and the subscriber address was CRUZ's residence (the "Residence").

e. On several occasions from at least on or about November 2, 2014, up to and including on or about at least February 2, 2015, IP Address-2 was used to access KIK Account-1 or Email Address-1. On the dates KIK Account-1 or Email Address-1 were accessed using IP Address-2 during that period, the subscriber for IP Address-2 was CRUZ, and the subscriber address was the Residence.

f. Based on the foregoing, I believe that, for some period up to at least September 2, 2014, IP Address-1 was assigned to CRUZ at the Residence. At some point between September 2, 2014 and November 2, 2014, however, IP Address-2 was assigned to CRUZ at the Residence. IP Address-2 was assigned to CRUZ at the Residence up to and including at least February 2, 2015.

11.   Based on my review of IP logs maintained by KIK and Time Warner Cable, I have learned the following, in substance and in part:

a. Between on or about December 24, 2014 up to and including at least on or about February 2, 2015, IP Address-2 was used to access KIK Account-1 approximately 41 times.

b. Between on or about December 22, 2014 up to and including at least on or about February 4, 2015, the School IP Address was used to access KIK Account-1 approximately 154 times.

## The KIK Photographs

12.   Based on my conversations with other FBI agents, my review of records maintained by the FBI, and my conversations with employees of the New York City Department of Education, I have learned, in substance and in part, that JON CRUZ, the defendant, is employed full time as a teacher and debate coach at the Bronx High School for Science ("Bronx Science").

13.   Based on my review of public databases and social network sites, including Google, Facebook, and Instagram, I have learned the following, in substance and in part:

a. The KIK Photographs depict a person ("Student-1") who graduated from Bronx Science in the spring of 2014.

-12-

b. Before Student-1 graduated from Bronx Science, Student-1 was a member of the debate team at Bronx Science (the "Debate Team").

c. Student-1 now attends a college in another state (the "College").

d. Student-1 maintains a Facebook account (the "Student Facebook Account"). The Student Facebook Account permits the public to view photographs posted to Student-1's account.

e. Student-1 is a Facebook friend of JON CRUZ, the defendant. Student-1 and CRUZ appear together in at least two photographs posted to the Student Facebook Account.

f. Student-1 has posted photographs to Student-1's Instagram account suggesting that, on certain occasions, Student-1 was at or near the College during periods in which IP Address-1 (in New York City) was used to send KIK messages from KIK Account-1.[4]

14. Based on my review of IP records maintained by Facebook and Time Warner, I have learned, in substance and in part, that from at least on or about January 5, 2015, up to and including at least on or about February 14, 2015, the Student Facebook Account was never accessed from IP Address-2.[5]

15. Based on my review of IP records maintained by KIK and Time Warner, I have learned, in substance and in part, that from at least on or about December 22, 2014, up to and including at least on or about February 24, 2015, KIK Account-1 was never accessed using IP addresses associated with the College.

16. For the reasons set forth above, I believe that the individual using the KIK Accounts was JON CRUZ, the defendant, and not Student-1. I believe CRUZ was using photographs of Student-1 for the KIK Accounts in order to conceal CRUZ's identity.

---

[4] Student-1's Instagram account also indicates that Student-1 was in New York City during periods in which IP Address-2 was used to send KIK messages from the KIK Account-1.

[5] Facebook did not provide IP logs beyond this time period for the Student Facebook Account.

### Individual-1 Facebook Accounts

17.   I and other FBI agents performed searches of Facebook for Name-1 (the name it was later determined was Individual-1 using an assumed identity).   We located several Facebook accounts for individuals identifying themselves as Name-1 (the "Name Facebook Accounts").   We compared the profile pictures for the Name Facebook Accounts to photographs of Student-1 from the Student Facebook Account (the "Student-1 Photographs").   For two of the Name Facebook Accounts ("Name Facebook Account-1" and "Name Facebook Account-2"), the individual depicted in the profile picture was the same as the individual depicted in the Student-1 Photographs.

18.   Based on my review of records maintained by Facebook, I have learned, in substance and in part, that, between on or about July 20, 2014 and on or about August 26, 2014, Facebook Account-2 was accessed using IP Address-1 on fifteen separate days.

19.   For the reasons set forth above, I believe that JON CRUZ, the defendant, is Individual-1 and is using the KIK Photographs and Name-1 to conceal his true identity.

### The Gift Cards

20.   Based on my review of documents maintained by Visa, I have learned the following, in substance and in part:

a. Gift Card-1 was purchased on or about September 1, 2014 at pharmacy located at a certain address ("Pharmacy-1"), which is approximately 279 feet from the Residence.

b. Gift Card-2 was purchased on or about August 31, 2014 at a Walgreens store located at a certain address ("Pharmacy-2"), which is approximately two blocks, or .2 miles, from the Residence.

c. Gift Card-3 was purchased on or about August 27, 2014 at a Walgreens store located at a certain address ("Pharmacy-3"), which is approximately 5 blocks, or .3 miles, from the Residence.

21.   Based on my review of documents maintained by the pharmacies, I have learned that Gift Card-1, Gift Card-2, and Gift Card-3 all were purchased in cash.

-14-

22.  Based on the proximity of the pharmacies to the
Residence, and the fact that KIK Account-1 was accessed from IP
Address-1 and IP Address-2, which were assigned to the Residence
from at least on or about September 2, 2014, up to and including
at least on or about February 2, 2015, I believe that JON CRUZ,
the defendant, purchased Gift Card-1, Gift Card-2, and Gift
Card-3 and used the gift cards to pay the Victims in exchange
for photographs.

### The Defendant's Email Account

23.  Based on my review of documents obtained from Google,
I have learned that JON CRUZ, the defendant, has a personal
email account maintained by Google (the "CRUZ Email Account").
Between on or about September 2, 2014, up to and including at
least on or about February 2, 2015, the CRUZ Email Account was
frequently accessed using IP Address-1 or IP Address-2.

24.  I have compared the IP activity associated with the
CRUZ Email Account to the IP activity associated with KIK
Account-1.  This comparison revealed that, on several occasions
the CRUZ Email Account and KIK Account-1 were accessed using the
same IP address within minutes of one another.  Based on my
training and experience, I am aware that, when two separate
accounts are accessed close in time from the same IP address
they are often being accessed by the same individual.  The
following chart depicts examples of the overlap between the CRUZ
Email Account and KIK Account-1:

| Date | IP Address Used | Time CRUZ Email Account Accessed | Time KIK Account-1 Accessed |
|---|---|---|---|
| 9/1/2015 | IP Address-1 | 3:54 p.m.[6] | 3:50 p.m. |
| 9/3/2015 | IP Address-1 | 1:31 a.m.<br>2:28 a.m. | 1:25 a.m.<br>2:44 a.m. |
| 1/6/2015 | IP Address-2 | 11:33 a.m. | 11:13 a.m.<br>11:24 a.m. |
| 1/9/2015 | IP Address-2 | 5:45 a.m. | 5:23 a.m.<br>5:30 a.m.<br>5:52 a.m. |
| 1/12/2015 | IP Address-2 | 11:09 a.m.<br>11:35 a.m. | 11:20 a.m.<br>11:35 a.m. |
| 2/2/2015 | IP Address-2 | 10:35 p.m. | 10:15 p.m.<br>10:42 p.m. |

---

[6] All times are stated Coordinated Universal Time ("UTC").

25.  Based on my conversations with other FBI agents who have conducted surveillance of the Residence, I believe that JON CRUZ, the defendant, resides alone. Because the CRUZ Email Account and KIK Account-1 were frequently accessed from IP Address-1 or IP Address-2 at or near the same time, I believe that both accounts were being accessed by CRUZ.

26.  For the reasons set forth above, I believe that the user who accessed the KIK Accounts to communicate with the Victims is JON CRUZ, the defendant, Individual-1, using Name-1 to hide his identity.

### The Search and Arrest

27.  After learning the information set forth above, the Government obtained a search warrant for the Residence.  The warrant was executed this morning, March 6, 2015.

28.  During the execution of the search warrant, I located JON CRUZ, the defendant, at the Residence.  After signing a written waiver of his <u>Miranda</u> rights, CRUZ admitted that he controlled the KIK Accounts and Email Account-1 and Email Account-2 and that he has been engaging in chats similar to those described above with many different minors for several years.  CRUZ admitted that, in those chats, he has both asked for and received pornographic photographs of the minors in exchange for payment.  CRUZ also admitted that he knew the minors with whom he chatted were under 18 years old.   CRUZ further admitted that he deleted the KIK application from his phones the night before, and frequently deletes and re-loads the KIK application.  CRUZ further admitted that he has been posing as Individual-1, using Name-1, on the KIK Accounts, to communicate with the minor victims.  CRUZ also admitted that he solicited non-nude photographs of a student at Bronx Science in exchange for a gift.

29.  During the execution of the search warrant, I and other FBI Agents located several items within the Residence, including the following:

a. A computer containing approximately 50 photographs depicting minor teenage boys posing nude.   At least approximately 10 of the nude photographs depicted Victim-1 posing in the positions described in Paragraph 7(a)(iv) above, including Victim-1 holding and pointing to his erect penis, with Victim-1's foot visible in the photographs.  Approximately 20 other nude photographs depicted another Victim ("Victim-4")

-16-

posing in various positions, including Victim-4 holding his erect penis, with Victim-4's foot in the photographs. Based on my training and experience, I believe that Victim-4 appears to be approximately 12 or 13 years old.

      b. Approximately 2 or 3 Visa gift cards worth approximately $100 each.

      c. Two mobile phones (collectively, the "Mobile Phones"). The KIK mobile communication application did not appear on the Mobile Phones at the time of seizure. The Mobile Phones contained, among other things:

      i. Photographs depicting what appear to be minor teenage boys giving "thumbs up selfies;" and

      ii. Photographs depicting what appear to be minor teenage boys wearing only their underwear and pointing to their crotches.

      WHEREFORE, deponent prays that JON CRUZ, the defendant, be imprisoned, or bailed, as the case may be.

 

AARON SPIVACK
Special Agent
Federal Bureau of Investigation

Sworn to before me this
6th day of March, 2015

THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK